IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ABIGAIL GAITAN,<br><br>    Plaintiff,<br><br>v.<br><br>ROMULUS, INC. D/B/A IHOP #3672,<br><br>    Defendant. | Civil Action No.<br><br><br>**JURY TRIAL<br>DEMANDED** |

## <u>COMPLAINT</u>

## <u>NATURE OF COMPLAINT</u>

1. Plaintiff brings this action for damages and reasonable attorney fees against Defendant Romulus, Inc. d/b/a IHOP #3672 ("Defendant") for violations of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. This action challenges Defendant's discriminatory conduct in subjecting Plaintiff to a hostile work environment based on her pregnancy, retaliating against her for attempting to exercise her rights under the FMLA, and wrongfully terminating

1

her employment when she was seven months pregnant, in violation of Title VII, the Pregnancy Discrimination Act, and the FMLA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343, which provides for jurisdiction in actions to recover damages under Acts of Congress providing for the protection of civil rights.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged in this Complaint occurred within this judicial district.

5. Defendant Romulus, Inc. d/b/a IHOP #3672 conducts business in this district, operating at 1850 US Highway 41, Schererville, Indiana 46375.

## ADMINISTRATIVE PROCEDURES

6. Plaintiff has fulfilled all conditions precedent necessary to proceed with this cause of action under Title VII and the FMLA. Plaintiff filed a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC")

on October 15, 2025, Charge Number 470-2026-00267, and received her Notice

of Right to Sue on or about December 12, 2025. This Complaint is filed within

ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## **PARTIES**

7. Plaintiff Abigail Gaitan is a female citizen of the United States and a resident of

Schererville, Indiana. At all times relevant to this action, Plaintiff was employed

by Defendant from April 2021 until her termination on May 10, 2025, when she

was seven months pregnant.

8. Defendant Romulus, Inc. d/b/a IHOP #3672 is a restaurant operation located at

1850 US Highway 41, Schererville, Indiana 46375. Defendant operates multiple

IHOP restaurant locations throughout the United States.

9. At all times relevant to this action, Defendant has employed fifteen (15) or more

employees for each working day in each of twenty or more calendar weeks in the

current and/or preceding calendar year and has continuously been an employer

engaged in an industry affecting commerce within the meaning of 42 U.S.C. §

2000e(b).

3

10. At all times relevant to this action, Defendant has employed fifty (50) or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year and is therefore an "employer" within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(4)(A)(i).

11. At all times relevant, Defendant was qualified and licensed to do business in Indiana, and at all times material hereto has conducted business within this District.

12. Defendant Romulus, Inc. d/b/a IHOP #3672 may be served with process by delivering a copy of the summons and complaint to its registered agent at 1048 N. 44th Street, Suite 210, Phoenix, Arizona 85008.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment History

13. Plaintiff began her employment with Defendant in April 2021 as a host and server at the IHOP restaurant location in Schererville, Indiana.

14. Due to her strong performance and work ethic, Plaintiff was promoted to assistant manager in 2023.

15. Within two weeks of her promotion to assistant manager, Plaintiff was promoted to general manager, a position she held until June 4, 2024.

16. As general manager, Plaintiff's responsibilities included managing kitchen and service staff, maintaining operational standards, ensuring compliance with company policies, overseeing food costs and labor management, conducting staff training, and managing the facility across all shifts.

17. Throughout her employment from April 2021 through early 2024, Plaintiff received no disciplinary actions as general manager and demonstrated exemplary performance that resulted in rapid career advancement within the company.

18. Plaintiff's annual salary as general manager was $55,000.

## Change in Management and Initial Adverse Actions

19. In May or June 2024, James Moore became the new district manager overseeing Plaintiff's location.

20. In May 2024, while Plaintiff was attending a mandatory conference in Arizona, her assistant manager made a bank deposit error.

21. Despite Plaintiff having no involvement in the error and being out of state at a company-required event, Moore issued Plaintiff her first disciplinary write-up as general manager for the incident.

22. When Plaintiff questioned the fairness of receiving a write-up for an error she did not commit, Moore stated he was "giving everybody a write-up to make it fair."

23. In late May 2024, Moore brought in Xavier Chavez from another IHOP location in Illinois to interview for a general manager position at Plaintiff's location.

24. On June 4, 2024, approximately one month after Moore assumed his position as district manager, Moore demoted Plaintiff from general manager to assistant manager.

25. Moore's stated reasons for the demotion included Plaintiff's alleged failure to meet numerous operational metrics within the short one-month period, including improving food costs, retraining the entire staff, hiring additional employees, learning standard operating procedures, finding four certified trainers and two certified crew chiefs, and reorganizing the store.

26. Moore had fired Plaintiff's assistant manager two weeks prior to Plaintiff's demotion, which significantly impacted Plaintiff's ability to meet his demands.

27. Following Plaintiff's demotion, Xavier Chavez was installed as the new general manager, with Plaintiff reporting to him as assistant manager.

28. Despite her demotion, Plaintiff's salary remained unchanged at $55,000 per year.

## Inappropriate Conduct and Pregnancy Discrimination

29. From the outset of his employment, Chavez engaged in inappropriate workplace behavior toward Plaintiff, including asking her during their first meeting whether she had a boyfriend.

30. Plaintiff became pregnant in November 2024.

31. Prior to this pregnancy, Plaintiff had suffered two miscarriages in September and October 2024 due to stress.

32. As Plaintiff's pregnancy became visible in late 2024 and early 2025, Chavez's inappropriate conduct toward her intensified.

33. Beginning in approximately January 2025, Chavez repeatedly made comments to Plaintiff about her weight gain, stating "you're gaining weight," "you need to lose weight," "you need to go to the gym," and when Plaintiff mentioned being on a diet, Chavez responded "well, it doesn't look like it."

34. Chavez physically touched Plaintiff by poking her waist area and made comments such as "you're not wearing a waist trainer?"

35. Chavez made sexually inappropriate comments about Plaintiff to other employees, including telling a server that Plaintiff looked like "a porn star" when Plaintiff wore glasses to work.

36. Chavez made derogatory comments about other pregnant employees, including expressing anger when learning of a server's pregnancy and stating "why is she pregnant? Like, she better not be pregnant."

37. Chavez made comments to Plaintiff about another employee named Mae who was pregnant, stating that Mae "was gaining weight/fat."

38. Chavez frequently expressed to Plaintiff his frustration about pregnant employees being "inconvenient" and discussed difficulties he experienced with pregnant employees at his previous IHOP locations.

39. In contrast to his treatment of Plaintiff and other female employees, Chavez did not make similar weight-related comments to or physically touch male employees who were overweight, including employees Mario (cook), Lucias Williams (assistant manager), Alessandro Reyes (cook), Luis Pérez (cook), and Jason (DMO).

40. Chavez also engaged in similar inappropriate physical contact and comments about body and appearance toward other female employees, including server Monya Mitchell-Brewer.

41. A male cook named Antonio whose wife was pregnant was permitted to take time off work to take his wife to the hospital and to attend to her medical needs, and he was able to return to work without adverse employment action.

## Pregnancy-Related Medical Leave Request and Shift Changes

42. In April 2025, Plaintiff's doctor advised her to take bed rest due to shin splints related to her pregnancy.

43. Plaintiff requested a week off work to comply with her doctor's recommendation and provided medical documentation to Chavez.

44. Following Plaintiff's request for pregnancy-related medical leave, Chavez switched Plaintiff's work schedule from first shift to second shift.

45. This shift change was unusual and unprecedented, as the restaurant was extremely slow during second shift hours and did not require a manager's presence during that time.

46. After Plaintiff's pregnancy became obvious and she requested medical leave, Chavez became noticeably distant in his interactions with Plaintiff.

**Increased Scrutiny and Notification of Intent to File FMLA Leave**

47. On May 8, 2025, Chavez called Plaintiff into the office and accused her of spending too much time in the office and not sufficiently interacting with staff and customers.

48. Plaintiff explained to Chavez all of the management tasks she had completed that day, including paperwork, reviewing labor reports, monitoring food costs, and performing other required duties.

49. On May 9, 2025, while at work, Plaintiff attempted to initiate the process of filing for Family and Medical Leave Act (FMLA) leave due to her pregnancy.

50. Plaintiff was unable to complete the FMLA paperwork at work because it required Chavez's signature.

51. On the evening of May 9, 2025, Plaintiff sent a text message to Chavez stating: "I need to file for FMLA. I'll bring in the paperwork Monday or Tuesday."

52. Prior to Plaintiff's text message about filing for FMLA leave, Chavez had been communicating with Plaintiff via text message.

53. After receiving Plaintiff's message about filing for FMLA leave, Chavez immediately ceased all communication with Plaintiff and did not respond to her text message.

### Discovery of Planned Termination

54. On the evening of May 9, 2025, the same day Plaintiff notified Chavez of her intent to file for FMLA leave, Plaintiff learned through her sister Gabriela Gaitan that management at another IHOP location had informed employees that Plaintiff was "getting fired soon."

55. Gabriela Gaitan, Plaintiff's sister and a former employee at Plaintiff's IHOP location, was working as a server at an IHOP location in Lansing, Indiana.

56. Gabriela Gaitan was friends with Katrina Fitzgerald, who had been Plaintiff's assistant manager and who was known to Defendant's management.

57. Tim, the general manager at the Lansing IHOP location, told Gabriela Gaitan that Plaintiff was "getting fired soon."

58. Also on May 9, 2025, while attempting to research FMLA procedures on a company computer, Plaintiff observed that Chavez had prepared termination paperwork for another manager that same day.

59. During this same time period, Defendant had been cross-training Amanda Riggio, a server, to assume Plaintiff's management responsibilities.

## Termination

60. On May 10, 2025, the day immediately following Plaintiff's notification to Chavez of her intent to file for FMLA leave, Chavez called Plaintiff into his office.

61. During this meeting, Chavez terminated Plaintiff's employment.

62. Chavez stated that Plaintiff was being terminated for being on her cell phone excessively during work hours.

63. Plaintiff denied the allegation of excessive cell phone use.

64. Chavez referenced disciplinary write-ups that Plaintiff had never been informed of and refused to provide Plaintiff with copies of these alleged write-ups.

65. At the time of her termination, Plaintiff was seven months pregnant, at approximately 25 weeks gestation.

## Pretext and Differential Treatment

66. Defendant's stated reason for terminating Plaintiff was pretextual.

67. Plaintiff had not engaged in excessive cell phone use, and no other employees were disciplined or terminated for similar alleged conduct.

68. The timing of Plaintiff's termination—occurring the day immediately after she notified management of her intent to file for FMLA leave—demonstrates a

causal connection between her protected activity and the adverse employment action.

69. Chavez's cessation of all communication with Plaintiff immediately upon learning of her intent to file for FMLA leave further demonstrates retaliatory animus.

70. Prior to Plaintiff's pregnancy becoming visible and her requests for pregnancy-related accommodations, Plaintiff had received no disciplinary actions and had demonstrated excellent performance warranting rapid promotions.

71. The sudden deterioration in Plaintiff's employment relationship coincided directly with her pregnancy becoming apparent and her requests for pregnancy-related leave.

72. Following Plaintiff's termination, Amanda Riggio assumed Plaintiff's management duties and responsibilities.

### **Adverse Consequences to Plaintiff**

73. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered significant economic damages, including loss of income of $55,000 per year.

74. On May 11, 2025, the day immediately following her termination, Plaintiff was admitted to the Community Hospital OB Emergency Department experiencing stress-induced contractions, abdominal pain, and shortness of breath.

75. Plaintiff's hospitalization was directly caused by the severe emotional distress resulting from her wrongful termination while seven months pregnant.

76. Plaintiff has suffered severe emotional distress, anxiety, humiliation, and mental anguish as a result of Defendant's discriminatory conduct.

77. Plaintiff has been forced to apply for mortgage assistance due to her inability to make mortgage payments following her wrongful termination.

78. Plaintiff filed for unemployment benefits following her termination, and her claim was approved.

79. As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer loss of income, loss of benefits, loss of professional reputation and standing, and other compensable damages.

## CLAIMS FOR RELIEF

## COUNT I: PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

14

80. Plaintiff re-alleges and incorporates paragraphs 1 through 79 as if fully set forth herein.

81. At all relevant times, Plaintiff was a qualified individual with respect to her position as assistant manager and previously as general manager.

82. Defendant subjected Plaintiff to differential treatment because of her pregnancy, including inappropriate comments regarding her weight gain, unwanted physical touching, assignment to unfavorable shift schedules, and heightened scrutiny not imposed on non-pregnant employees.

83. Defendant regarded Plaintiff's pregnancy as a negative factor in her employment, as evidenced by General Manager Chavez's repeated expressions of frustration about pregnant employees being "inconvenient" and his hostile reaction to learning of other employees' pregnancies.

84. Defendant's stated reason for Plaintiff's termination—excessive cell phone use—was pretextual and unsupported by evidence.

85. Similarly situated male employees and non-pregnant employees were not subjected to comparable scrutiny, inappropriate physical touching, or adverse employment actions.

15

86. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k).

87. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered economic and non-pecuniary damages.

88. Defendant's discriminatory conduct was undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT II: RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

89. Plaintiff re-alleges and incorporates paragraphs 1 through 88 as if fully set forth herein.

90. Plaintiff exercised her rights under the FMLA by notifying Defendant on May 9, 2025, of her intent to file for pregnancy-related medical leave.

91. Defendant took adverse action against Plaintiff by terminating her employment on May 10, 2025, the day immediately following her notification of intent to take FMLA leave.

92. A causal connection exists between Plaintiff's protected FMLA activity and her termination, as demonstrated by the temporal proximity of one day between her notification and termination, Defendant's immediate cessation of communication following her FMLA notification, and the pretextual nature of the stated reason for termination.

93. Defendant's actions violated 29 U.S.C. § 2615(a)(1) and (2) of the Family and Medical Leave Act.

94. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages, lost benefits, and other economic and non-economic damages.

95. Defendant's retaliatory conduct was willful within the meaning of 29 U.S.C. § 2617(a)(1)(A)(iii), entitling Plaintiff to liquidated damages.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

96. Plaintiff re-alleges and incorporates paragraphs 1 through 95 as if fully set forth herein.

17

97. Plaintiff engaged in protected activity by opposing Defendant's discriminatory treatment based on her pregnancy, including objecting to inappropriate comments and conduct.

98. Defendant took adverse action against Plaintiff by terminating her employment while she was seven months pregnant.

99. A causal connection exists between Plaintiff's opposition to discriminatory practices and her termination, as evidenced by the intensification of adverse treatment following her pregnancy becoming visible and her requests for pregnancy-related accommodations.

100. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

101. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered economic and non-pecuniary damages.

102. Defendant's retaliatory actions were undertaken with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

18

a) Back pay from the date of her termination through the date of judgment, and front pay if reinstatement is not feasible;

b) Compensatory damages for emotional distress, mental anguish, and other non-economic harm caused by Defendant's discriminatory and retaliatory conduct;

c) Punitive damages based on Defendant's willful, malicious, and deliberate conduct in violating Plaintiff's federally protected rights;

d) Reasonable attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 2000e-5(k) and 29 U.S.C. § 2617(a)(3);

e) All costs of court;

f) Prejudgment and post-judgment interest at the maximum rate allowed by law;

g) Declaratory relief establishing that Defendant violated Plaintiff's statutory rights under Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act;

h) Injunctive relief, including an order prohibiting Defendant from engaging in future discriminatory or retaliatory conduct;

i) A trial by jury as to all triable issues; and

j) Such other and further relief as the Court deems just and proper.

Respectfully submitted this 11th day of March, 2026.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

**BARRETT & FARAHANY**

s/ *Aaron B. Maduff*

Aaron B. Maduff
*Counsels for Plaintiff Abigail Gaitan*

Aaron B. Maduff
Atty. No. 626932 (IL)
77 Wacker Dr.
Suite 4500
Chicago, IL 60602

Alan G. Crone, TN Bar No. 14285
(*Pro hac vice pending*)
Alexander W. Gass, MO Bar No. 72810
(*Pro hac vice pending*)
88 Union Avenue, 13th Floor
Memphis, TN 38103
Telephone: (901) 737-7740
Facsimile: (901) 474-7926

88 Union Avenue, Suite 1300
Memphis, Tennessee 38103
(901) 737-7740
acrone@justiceatwork.com
agass@justiceatwork.com

21

**DECLARATION AND VERIFICATION**

I, **Abigail Gaitan**, verify and declare that the facts stated in the foregoing Verified Complaint to the best of my knowledge and belief are true, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint.

/s/Abigail Gaitan

_____

**Abigail Gaitan**

Date: _____03/11/2026_____

21